UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION 3:16-CV-00834-TBR

GGNSC LOUISVILLE CAMELOT, LLC, *et al.*                    PLAINTIFFS

v.

JOYCE COPPEDGE, *et al.*                                  DEFENDANTS

## Memorandum Opinion and Order

This case requires the Court to venture into familiar territory.   On behalf of her husband Benjamin, Joyce Coppedge signed a contract requiring Benjamin to arbitrate all claims arising from his stay at Golden LivingCenter (GLC) Camelot, a nursing home.   The Coppedges later filed suit in state court, alleging Benjamin suffered injuries due to inadequate care.   In turn, Plaintiffs filed this suit, seeking to enforce Benjamin's arbitration agreement and enjoin the Coppedges from further pursing related state court litigation.

In an effort to stave off arbitration, the Coppedges raise a litany of arguments – all of which have been previously rejected by this Court on multiple prior occasions.   This case presents no reason to depart from that precedent.   The Coppedges must arbitrate their claims against these Plaintiffs, save for Joyce's loss of consortium claim.   For the following reasons, Defendants' motion to dismiss [DN 6] is DENIED, and Plaintiffs' motion to compel arbitration [DN 5] is GRANTED IN PART and DENIED IN PART.

# I. Facts and Procedural History

The facts relevant to the instant motions are undisputed. In August 2014, Benjamin Coppedge was admitted to GLC Camelot, a nursing home in Louisville, Kentucky. [DN 6-2 at 1.] During his stay, the Coppedges allege Benjamin "suffered physical and emotional injuries due to inadequate care, and his health and physical condition deteriorated beyond that caused by the normal aging process." [*Id.* at 2.] They filed suit in Jefferson County, Kentucky Circuit Court against various persons and entities associated with GLC Camelot.[1] That case is styled *Coppedge, et al. v. GGNSC Louisville Camelot LLC, d/b/a Golden LivingCenter – Camelot, et al.*, Civil Action No. 16-CI-005560. *See* [DN 1-2.] In their state suit, the Coppedges assert various negligence and statutory claims. Joyce also asserts a claim for loss of spousal consortium.

Plaintiffs then filed this suit in federal court, naming the Coppedges as defendants. *See* [DN 1.] They claim that a document executed by Joyce, Benjamin's power of attorney, requires all of the Coppedges' claims against them be submitted to arbitration. That document, entitled the "Alternative Dispute Resolution Agreement," states that Benjamin and the nursing home "agree that any disputes covered by this Agreement . . . that may arise between them shall be resolved exclusively by an ADR process that shall include mediation and . . . binding

---

[1] Defendants in the state action are GGNSC Louisville Camelot LLC d/b/a Golden LivingCenter-Camelot; GGNSC Administrative Services, LLC; GGNSC Holdings, LLC; GGNSC Equity Holdings, LLC; GGNSC Equity Holdings II, LLC; Golden Gate National Senior Care, LLC; Golden Gate Ancillary, LLC; GGNSC Clinical Services, LLC; GPH Louisville Camelot, LLC; Clifton Lake, in his capacity as Administrator of Golden LivingCenter – Camelot; Kathy Dearing, in her capacity as Administrator of Golden LivingCenter – Camelot; and John Does 1 through 5. Lake, Dearing, and the John Doe defendants are not parties to this suit.

arbitration." [DN 1-1 at 2.] The agreement was signed by Joyce Coppedge and a representative of GLC Camelot. [*Id.* at 5.]

In pertinent part, the agreement provides that it applies to "any and all disputes arising out of or in any way relating to this Agreement or to the Resident's stay at the Facility or the Admissions Agreement between the Parties that would constitute a legally cognizable cause of action." [*Id.* at 3.] The first page contains conspicuous language regarding the waiver of a right to a jury trial:

> **THE PARTIES UNDERSTAND, ACKNOWLEDGE, AND AGREE THAT THEY ARE SELECTING A METHOD OF RESOLVING DISPUTES WITHOUT RESORTING TO LAWSUITS OR THE COURTS, AND THAT BY ENTERING INTO THIS AGREEMENT, THEY ARE GIVING UP THEIR CONSTITUTIONAL RIGHT TO HAVE THEIR DISPUTES DECIDED IN A COURT OF LAW BY A JUDGE OR JURY, THE OPPORTUNITY TO PRESENT THEIR CLAIMS AS A CLASS ACTION AND/OR TO APPEAL ANY DECISION OR AWARD OF DAMAGES RESULTING FROM THE ADR PROCESS EXCEPT AS PROVIDED HEREIN.**

[*Id.* at 2 (emphasis in original).] Signing the agreement was not a condition of Benjamin's admission to GLC Camelot. [*Id.* at 2.] Joyce signed the agreement on Benjamin's behalf pursuant to a durable power of attorney (POA). *See* [DN 1-3.] Benjamin's POA contains the following general grant of authority:

> I give my attorney-in-fact the following powers:

> 7. <u>AUTHORITY TO ACT-</u>For me and in my name, place and stead, I give and grant unto my Attorney-in-fact full power and authority to do every act necessary, requisite, or proper to be done in and about the premises as fully as I might or could do if personally present as she/he may think fit.

[*Id.* at 2 (emphasis removed).]

After Benjamin and Joyce filed suit in Jefferson Circuit Court, Plaintiffs initiated this action. They seek to enforce the arbitration agreement and compel the Coppedges' claims against them in the state action to arbitration. The Coppedges oppose arbitration and seek dismissal of Plaintiffs' complaint.

## II. Discussion

As this Court recently recognized, Defendants' arguments are not novel. *GGNSC Louisville Mt. Holly, LLC v. Turner*, No. 3:16-CV-00149-TBR, 2017 WL 537200, at *3 (W.D. Ky. Feb. 9, 2017). Rather, each argument has been raised before, and rejected by, multiple federal district judges sitting in this Commonwealth. *See id.* (listing cases). As more fully explained below, Defendants' motion to dismiss must be denied. However, under Kentucky law, Joyce Coppedge's loss of consortium claim belongs to her, and not to Benjamin. Because she is not a party to the arbitration agreement, her claim – and her claim only – against these Plaintiffs is not subject to arbitration.

### A. Motion to Dismiss

The Coppedges assert several grounds for dismissal. Many of their arguments overlap with those raised in response to Plaintiffs' motion to compel arbitration. The Court will address the Coppedges' jurisdictional arguments in considering their motion to dismiss, as their arguments regarding the arbitration agreement's validity and enforceability are more appropriately considered as they relate to Plaintiffs' motion.

(1) *Subject-Matter Jurisdiction*

First, the Coppedges argue the Court lacks subject-matter jurisdiction over this action because Plaintiffs failed to join necessary parties that would destroy diversity. Clifton Lake and Kathy Dearing, GLC Camelot's administrators and Kentucky residents, are both defendants in the Coppedges' state suit. The Coppedges argue the Court should "look through" to the underlying dispute between the parties, find Lake and Dearing owed Benjamin common-law and statutory duties of care, and hold they are indispensable parties to this action whose joinder would divest the Court of diversity jurisdiction under 28 U.S.C. § 1332.

In *Vaden v. Discover Bank*, the Supreme Court held that in considering petitions to compel arbitration arising under § 4 of the Federal Arbitration Act (FAA), the district court possesses jurisdiction "only if, 'save for' the [arbitration agreement], the entire, actual 'controversy between the parties,' as they have framed it, could be litigated in federal court." *Vaden v. Discover Bank*, 556 U.S. 49, 66 (2009). However, the Court limited its holding to cases involving federal question jurisdiction. *Id.* at 62. As this Court and numerous others have held, this "look through" doctrine does not apply when diversity of citizenship supplies the basis for the district court's jurisdiction. *See, e.g.*, *Northport Health Servs. of Ark. v. Rutherford*, 605 F.3d 483, 489-91 (8th Cir. 2010); *GGNSC Louisville Hillcreek, LLC v. Watkins*, No. 3:15-cv-902-DJH, 2016 WL 815295, at *2 (W.D. Ky. Feb. 29, 2016); *GGNSC Frankfort, LLC v. Tracy*, No. 14-30-GFVT, 2015 WL

1481149, at *3 (E.D. Ky. Mar. 31, 2015); *Sun Heathcare Grp., Inc. v. Dowdy*, No. 5:13-CV-0169, 2014 WL 790916, at *1 (W.D. Ky. Feb. 26, 2014).

Neither must this case be dismissed for failure to join Lake and Dearing as indispensable parties. The administrators' mere presence in the state court action does not make them indispensable here. *See PaineWebber, Inc. v. Cohen*, 276 F.3d 197, 203-04 (6th Cir. 2001). Further, they are not indispensable parties under Rule 19, because here, the Court is able to "accord complete relief among [the] existing parties," and their interest in the case is the same interest possessed by the named Plaintiffs. Fed. R. Civ. P. 19(a)(1)(A)-(B). This action may proceed in the administrators' absence. *See, e.g.*, *GGNSC Louisville St. Matthews v. Madison*, No. 3:16-CV-00830-TBR, 2017 WL 2312699, at *4 (W.D. Ky. May 26, 2017); *Watkins*, 2016 WL 815295, at *2-3; *Diversicare of Nicholasville, LLC v. Lowry*, 213 F. Supp. 3d 859, 862-65 (E.D. Ky. 2016); *GGNSC Louisville Hillcreek, LLC v. Warner*, No. 3:13-CV-752-H, 2013 WL 6796421, at *3-4 (W.D. Ky. Dec. 19, 2013).

(2) Colorado River *Abstension*

The Coppedges next argue that even if the Court possesses subject-matter jurisdiction over this action, it should abstain from exercising that jurisdiction pursuant to *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). In *Colorado River*, the Supreme Court recognized that while "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court," the "general principle is to avoid duplicative litigation" between parallel suits in federal and state court. *Id.* at 817. However,

the Court characterized this doctrine as "an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Id.* at 813.

The Sixth Circuit has set forth eight factors to be considered by the Court in determining whether it should exercise *Colorado River* abstention.[2] *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002). Other courts have thoughtfully considered these factors in this same context, concluding they weigh heavily against abstention. *See, e.g.*, *Madison*, 2017 WL 2312699, at *4-5; *Preferred Care, Inc. v. Howell*, 187 F. Supp. 3d 796, 805-07 (E.D. Ky. 2016); *Watkins*, 2016 WL 815295, at *3-4; *Tracy*, 2015 WL 1481149, at *7-9. As the Coppedges point out, the Sixth Circuit recently upheld a district court's application of *Colorado River* abstention in *Preferred Care of Delaware, Inc. v. VanArsdale*, 676 F. App'x 388 (6th Cir. 2017). However, in that case, the state court had already held the arbitration agreement unenforceable by the time the federal court addressed the matter – a circumstance not present in this case. To the Court's knowledge, the Coppedges' state suit has not progressed beyond the pleading stage.

---

[2] The eight factors to be considered are

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; . . . (4) the order in which jurisdiction was obtained[;] . . . (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

*Great Earth*, 288 F.3d at 886.

The Court possesses subject-matter jurisdiction and need not abstain from exercising it. Accordingly, Defendants' motion to dismiss [DN 6] is DENIED.

## B. Motion to Compel Arbitration

Plaintiffs move to compel arbitration pursuant to § 4 of the Federal Arbitration Act. The FAA codifies "a national policy favoring arbitration when the parties contract for that mode of dispute resolution," *Preston v. Ferrer*, 552 U.S. 346, 349 (2008), and puts arbitration agreements "upon the same footing as other contracts," *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)). The statute establishes a procedural framework applicable in both federal and state courts, and also mandates that substantive federal arbitration law be applied in both. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265 (1995); *Southland Corp. v. Keating*, 465 U.S. 1, 16 (1984).

Section 3 of the FAA permits a party seeking to enforce an arbitration agreement to request that litigation be stayed until the terms of the arbitration agreement have been fulfilled. 9 U.S.C. § 3. Before compelling arbitration, the Court "must engage in a limited review to determine whether the dispute is arbitrable." *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003)). This review requires the Court to determine first whether "a valid agreement to arbitrate exists between the parties," and second whether "the specific dispute falls within the substantive scope of the agreement." *Id.* (quoting *Javitch*, 315 F.3d at

624).  "Because arbitration agreements are fundamentally contracts," the Court must "review the enforceability of an arbitration agreement according to the applicable state law of contract formation."  *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943-44 (1995)).

(1) *Interstate Commerce*

The Coppedges first claim the arbitration agreement fails to satisfy the FAA's requirement that it evidence a transaction involving interstate commerce.  9 U.S.C. § 2.  The Supreme Court has interpreted the phrase "involving commerce" in the FAA as signaling the broadest permissible exercise of Congress' Commerce Clause power.  *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).  Based upon that interpretation, this Court has found on multiple prior occasions that nursing home admission agreements implicate interstate commerce because the food, medicine, and supplies used by nursing homes travel through interstate channels.  *See Life Care Centers of Am., Inc. v. Estate of Neblett*, No. 5:14-CV-00124-TBR, 2014 WL 5439623, at *6-7 (W.D. Ky. Oct. 22, 2014); *Dowdy*, 2014 WL 790916, at *11-12; *Warner*, 2013 WL 6796421, at *7-8.  The arbitration agreement at issue in this case plainly reflects a transaction in interstate commerce.

(2) *Power of Attorney*

Next, the Coppedges argue the arbitration agreement is unenforceable because Benjamin's power of attorney did not grant Joyce the authority to enter into such agreements on his behalf.  Their argument is based upon the Kentucky

Supreme Court's holding in *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306, 237 (Ky. 2015), that powers of attorney must contain language specifically authorizing the representative to waive the principal's right to a trial by jury. However, this Court (and others) subsequently recognized that the rule announced in *Whisman* violated the FAA by singling out arbitration agreements for differential treatment. *See, e.g.*, *Preferred Care of Delaware, Inc. v. Crocker*, 173 F. Supp. 3d 505, 519-20 (W.D. Ky. 2016). The United States Supreme Court recently adopted this view in *Kindred Nursing Centers L.P. v. Clark*, 581 U.S. ___ (2017). In *Kindred*, the Court held that "[t]he Kentucky Supreme Court's clear-statement rule . . . fails to put arbitration agreements on an equal plane with other contracts." *Id.*, slip op. at 5. "Such a rule," the Court said," is too tailor-made to arbitration agreements . . . to survive the FAA's edict against singling out those contracts for disfavored treatment." *Id.*, slip op. at 6.

Following *Kindred*, then, the proper inquiry is whether the grant of authority contained in the power of attorney is "sufficiently broad to cover executing an arbitration agreement." *Id.*, slip op. at 9. Here, the POA contains a general grant of vesting Joyce with "full power and authority to do every act necessary, requisite, or proper" as Benjamin could do personally. [DN 1-3 at 2.] This language unquestionably encompasses the power to enter into a contract, including an arbitration agreement.

(3) *Unconscionability*

The Coppedges next contend the arbitration agreement is procedurally and substantively unconscionable. Unconscionability comes in two varieties, procedural and substantive. Procedural unconscionability "pertains to the process by which an agreement is reached." *Conseco Fin. Serv. Corp. v. Wilder*, 47 S.W.3d 335, 341 n.22 (Ky. Ct. App. 2001). In contrast, substantive unconscionability "refers to contractual terms that are unreasonably or grossly favorable to one side and to which the disfavored party does not assent." *Id.* (citing *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 181 (3d Cir. 1999)).

The Supreme Court of Kentucky has said that "[a]dhesion contracts," including ones containing arbitration clauses, "are not *per se* improper." *Schnuerle v. Insight Commc'ns Co., L.P.*, 376 S.W.3d 561, 576 (Ky. 2012). In previous cases, this Court has considered and rejected the same unconscionability arguments raised by the Coppedges. *See Preferred Care of Delaware, Inc. v. Hopkins*, No. 5:15-CV-00191-GNS-LLK, 2016 WL 3546407, at *4-5 (W.D. Ky. 2016); *Arnold v. Owensboro Health Facilities, L.P.*, No. 4:15-CV-00104-JHM, 2016 WL 502601, at *4-5 (W.D. Ky. Feb. 8, 2016) (collecting cases). Their arguments, at their core, "are nothing more than objections to arbitration agreements *in general*, and therefore directly contradict the policy embodied in the FAA." *Brookdale Sr. Living, Inc. v. Stacy*, 27 F. Supp. 3d 776, 788 (E.D. Ky. 2014) (emphasis in original). The

arbitration agreement at issue in this case is neither procedurally nor substantively unconscionable.[3]

(4) *Loss of Consortium*

Lastly, the Coppedges claim that Joyce's loss of spousal consortium claim may not be compelled to arbitration. Under Kentucky law, a claim for loss of consortium accrues directly to the spouse and it may be asserted directly by him or her. KRS 411.145; *Martin v. Ohio County Hosp. Corp.,* 295 S.W.3d 104, 108 (Ky. 2009). Joyce Coppedge was not a party to the arbitration agreement at issue here. Although she signed the agreement, she did so upon Benjamin's behalf. The agreement applies to his claims, not hers. Joyce's loss of consortium claim is not subject to arbitration. *See Pembroke Health Facilities, L.P. v. Ford*, No. 5:16-CV-00158-TBR, 2017 WL 2486354, at *6 (W.D. Ky. Jun. 8, 2017); *Richmond Health Facilities v. Nichols*, 811 F.3d 192, 197-99 (6th Cir. 2016).

## C. Remedy

As explained above, all of the Coppedges' claims against Plaintiffs are subject to arbitration, except Joyce's loss of consortium claim. The remaining question, then, is the proper remedy. Plaintiffs seek an injunction barring Defendants from further pursing the underlying litigation against them in Jefferson Circuit Court. Defendants argue that the Anti-Injunction Act, 28 U.S.C. § 2283, prohibits such an order.

---

[3] The Coppedges also contend the arbitration agreement is unconscionable because it contains a damages limitation, something that is prohibited under Kentucky law. [DN 6-2 at 28.] The Court has thoroughly reviewed the agreement at issue, and is unable to find the clause to which the Coppedges refer. *See* [DN 1-1.]

The Federal Arbitration Act "does not specifically authorize federal courts to stay proceedings pending in state courts." *Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 894 (6th Cir. 2002) (citations omitted). Accordingly, "the district court's authority to enjoin state-court proceedings is subject to the legal and equitable standards for injunctions generally, including the Anti-Injunction Act." *Id.* In turn, the Anti-Injunction Act provides, "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C § 2283.

In *Great Earth*, after a trial court concluded that the parties' dispute was subject to arbitration, the Sixth Circuit held that "[a]n injunction of the state proceedings [was] necessary to protect the final judgment of the district court." *Great Earth*, 288 F.3d at 894. Such is the case here. Having concluded that Joyce entered into a binding arbitration agreement with GLC Camelot on Benjamin's behalf, the injunction Plaintiffs request "properly falls within the exception for injunctions 'necessary to protect or effectuate [this Court's] judgments.'" *Id.* (quoting 28 U.S.C. § 2283). "Otherwise, [the Coppedges] would be permitted to circumvent [the] arbitration agreement and in doing so, circumvent this Court's judgment that [they] be compelled to arbitrate [Benjamin's] claims." *Stacy*, 27 F. Supp. 3d at 792. This Court has often taken this same approach in the past, and it does so again today. *See, e.g.*, *GGNSC Louisville Mt. Holly LLC v. Stevenson*, No. 3:16-CV-00423-JHM, 2016 WL 5867427, at *4 (W.D. Ky. Oct. 6, 2016); *Watkins*,

2016 WL 815295, at *7; *Warner*, 2013 WL 6796421, at *10. Of course, Joyce Coppedge is not enjoined from further pursuing her loss of spousal consortium claim, because that claim is not subject to arbitration.

## IV. Conclusion and Order

For the foregoing reasons, IT IS HEREBY ORDERED:

Defendants' motion to dismiss [DN 6] is DENIED. Plaintiffs' motion to compel arbitration [DN 5] is GRANTED IN PART and DENIED IN PART. Defendants are ENJOINED from further pursing all claims against Plaintiffs, other than Joyce Coppedge's loss of spousal consortium claim, in the Jefferson Circuit Court action styled *Coppedge, et al. v. GGNSC Louisville Camelot LLC, d/b/a Golden LivingCenter – Camelot, et al.*, Civil Action No. 16-CI-005560. The parties are COMPELLED to arbitrate the claims that are subject to this injunction. Counsel shall promptly inform the Jefferson Circuit Court of this Memorandum Opinion and Order.

This proceeding is STAYED until the conclusion of the ordered arbitration. The parties shall inform the Court when arbitration is complete.

CC: Counsel of Record